## W. MAZET v. CITY OF PITTSBURGH ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 11, 1889—Decided October 6, 1890.
[To be reported.]

1. When a cause in equity is heard on bill and answer, all material and relevant averments of fact, contained in and proper for the answer, must be accepted as true, whether responsive to the bill or independent matters of defence; but inferences of law or fact, drawn by the defendant from his own averments, are not within the rule; such inferences are solely for the court.

(a) By § 6, act of May 23, 1874, P. L. 230, it is required that city contracts for work or materials shall be given to "the lowest responsible bidder, under such regulations as shall be prescribed by ordinance." Ordinances of the city of Pittsburgh, passed in pursuance thereof, provided for the awarding of such contracts after public notice, upon specifications approved by the Department of Awards:

2. The true intent of said statute and ordinances is to secure to the city the benefit and advantage of fair and just competition between bidders, and at the same time to prevent favoritism and fraud in every form; and, to that end, it is essential that there should be plans and specifications on which to bid, as otherwise there can be no competitive bidding.

3. The expression "lowest bidder," in the act of 1874, necessarily implies a common standard by which to measure the respective bids, and that common standard must necessarily be previously prepared specifications, freely accessible to all competitors for the contract, upon which alone their respective bids are to be based.

4. Wherefore, a contract, let under an ordinance of said city directing the paving of a street, without specifying the kind of paving to be done, is illegal, null and void, when no specifications for the kind of pavement

contracted for were prepared prior to the bidding, and, on the contrary, the advertisement inviting bids referred bidders to specifications on file in a certain office, all which related to other kinds of paving.

5. Such contract is void, notwithstanding that it was awarded and was approved by councils without fraud, and notwithstanding that, in the opinion of the city officers, competition as to the kind of pavement contracted for was widened, and the city's interests promoted, by directing each bidder therefor to prepare his own specifications and submit them with his bid, and that this course was taken.

6. When a bill to set aside a city contract for street paving, is filed by a citizen, an attack upon the plaintiff's standing in court, on the ground that he is acting, not in good faith, but as the mere cover of an unsuccessful bidder for the contract, should be made by a plea in the nature of a plea in abatement, and not by averments in the answer to the bill.

7. At all events, such averments in the answer as to the motives of the plaintiff are immaterial, when the answer concedes that, as the owner of property upon the street in question, liable to be assessed for the cost of the improvement or to be taxed therefor in common with the general public, the plaintiff had a pecuniary interest in the matter from the inception of the illegal contract.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 112 October Term 1889, Sup. Ct.; court below, No. 87 January Term 1889, C. P. No. 2, in Equity.

In October, 1888, William Mazet filed a bill in equity against the city of Pittsburgh; William McCallin and others, composing the Department of Awards of said city; E. M. Bigelow, chief of the Department of Public Works of said city; and J. J. Booth and William Flinn, partners as Booth & Flinn; praying that a certain contract between said city and Booth & Flinn, for the paving and curbing of Craig street, be declared null and void, and that the doing of any work thereunder be restrained by injunction.

The following facts, alleged in the bill, were admitted by the defendants' answers:

In accordance with the provisions of § 6, act of May 23, 1874, P. L. 230, directing that all work, etc., to be done for cities shall be let by contract to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance, the councils of the city of Pittsburgh, on June 1, 1881, enacted an ordinance providing for the letting of contracts for work, ma-

terials or supplies to the lowest responsible bidder, and ordaining that all contracts exceeding in value the sum of $50 should be let or entered into only after proposals therefor were invited by advertisement, in the official newspapers of the city, for not less than five days.   By § 22 of an ordinance to carry into effect the act of June 14, 1887, P. L. 386, a department, known as the Department of Awards, was created for the awarding of contracts for public works and supplies, and it was enacted, inter alia, that all such contracts should be awarded publicly, in the common council chamber, to the lowest responsible bidder ; that no contract exceeding $50 in amount should be binding on the city until approved by the councils, and, when so approved, the head of the proper department should execute it on behalf of the city ; and that all contracts should be awarded after due public notice, as already provided by law, upon such specifications as should be approved by the Department of Awards.

On August 1, 1888, the city councils enacted an ordinance for the paving and curbing of Craig street, from Fifth Avenue to Centre Avenue, the cost of the same to be assessed and collected according to the provisions of the act of June 14, 1887, P. L. 386.   The ordinance did not designate the kind of paving and curbing to be laid.   On August 16, 1888, E. M. Bigelow, as chief of the Department of Public Works of the city, advertised for sealed proposals for the performance of various items of public work, including the paving and curbing of Craig street.   The advertisement did not state the kind, character or quality of the paving and curbing to be done on said street, but it contained the following statement : " Plans and specifications can be seen, and blanks for bidding can be had at this office."

In response to this advertisement bids for the work to be done on Craig street were received on August 28, 1888, the day specified for the close of the bidding, from Booth & Flinn and from the Warren-Scharf Asphalt Paving Company, accompanied by specifications prepared by the respective bidders. Booth & Flinn proposed to put down what was known as a vulcanite asphalt pavement, submitting alternate bids with varying specifications and prices ; and the Warren-Scharf company proposed to put down what was known as the Trinidad

Asphalt Sheet pavement.   These parties were the only bidders. On September 10, 1888, the Department of Awards awarded the contract for Craig street to Booth & Flinn as the lowest bidders.   This award was subsequently approved by councils, and in pursuance thereof a contract for said work was entered into between the city and Booth & Flinn.

The bill charged fraud in the awarding of the contract to Booth & Flinn, but the answers of the defendants specifically denied this charge.

The seventh paragraph of the bill averred that,`

"At no time, from August 16, to August 28, 1888, were there any plans or specifications for the work of paving or curbing Craig street prepared or approved by any department of the city, and no specifications whatever for said work, during said time, were upon file, or open to inspection or examination by parties proposing to bid, at the office of the said Bigelow, or elsewhere ; but, on the contrary thereof, to persons desiring to bid upon said work, and wishing to know the work required or proposed to be done, applying for said plans and specifications for the purpose of bidding, said defendant, Bigelow, refused to exhibit any plans and specifications, and directed such persons to prepare their own specifications, to be enclosed with their bids ; and so it was impossible for those proposing to bid, to know or have any idea as to the nature, quality or character of the work to be done.   In consequence of the total want of plans and specifications for said work and the directions of said Bigelow, all bidders on said work prepared their own specifications in accordance with their own judgment of what was becoming and necessary, or would be required, and submitted the same along with their respective bids."

The answer of the city of Pittsburgh responded to these allegations as follows :

"7. The averments in the seventh paragraph of the bill are denied.   There were plans and specifications for the work of curbing and paving Craig street prepared and approved by the proper department of the city, on file in the Department of Public Works, and open to the inspection and examination of all parties proposing to bid for the paving or curbing of said Craig street.   This plan showed the surface of the street; the street as it had to be prepared by grading ; the number of

square feet of paving to be done; the number of lineal feet of curbing to be done; and the specifications embraced paving with cobble-stone, paving with irregular block-stone, and paving with block-stone. There were no specifications as to what is called an asphalt pavement.

" When the proposals for the grading of Craig street were advertised for, the situation was this : The Warren-Scharf Asphalt Paving Company had the sole and exclusive right of laying what is called the Trinidad Standard Sheet asphalt pavement in the city of Pittsburgh, and no person or firm could lay that kind of a pavement except the Warren-Scharf Asphalt Paving Company. Therefore, if the specifications for asphalt pavement had been made, and the same had been such as are used by the Warren-Scharf Asphalt Paving Company, the result would have been that no person whatever could have bid for the pavement except the Warren-Scharf Asphalt Paving Company.

" In competition with the Trinidad Standard Sheet asphalt pavement is one called the vulcanite asphalt pavement; but, to have restricted bidding to it alone would have prevented bids for the Trinidad Standard Sheet asphalt pavement. Then there are certain kinds of rock asphaltum which are obtained in Switzerland, and to have specifications for Trinidad asphaltum would have prevented bids for rock asphaltum pavement. These are the only kinds of asphaltum pavements, and for each kind each company has its own specifications. By not making specifications as to the particular kind of pavement, but receiving bids for all, the city opened competition for all kinds of asphaltum pavements, and at the same time any person or company laying any other kind of a pavement was at liberty to bid.

" The specifications on file in the office of the chief of the Department of Public Works do show what kind of curbing was to be laid."

The city's answer averred, further, that the pavement and work specified in the bids of Booth & Flinn were not wholly and altogether different from the pavement and work specified in the bid of the Warren-Scharf company, but, on the contrary, all of said bids related to a smooth asphalt pavement, differing, however, in the manner of laying said pavement and in some other respects ; that it was not true that there was no competi-

tion between bidders on the price for the work so to be done, but, on the contrary, the manner in which the bids were received gave the widest field for competition. The answer of Booth & Flinn contained averments substantially to the same effect.

The bill averred, and the answers admitted, that the plaintiff was a citizen and tax-payer of the city of Pittsburgh, and that, during all the transactions referred to in the bill, he had been and still was the owner of certain real estate fronting about 400 feet on Craig street, upon which property the city claimed to assess a portion of the cost of paving said street. But each of the answers impugned the good faith of the plaintiff in preferring his bill. Upon this subject the answer of the city and its officers averred:

" That this bill is not filed in good faith by the said plaintiff, for the purpose of having any grievance of his righted by the court, but the said·plaintiff is merely a cover for the Warren-Scharf Asphalt Paving Company; and they believe the bill is filed at its instance and at its suggestion, and is therefore a collusive one and not a bill filed in good faith."

Booth and Flinn's answer averred:

" These defendants aver that the bill is not filed in good faith by the plaintiff, but on the contrary thereof, he is merely a cover, and, in fact, the said plaintiff represents ·the Warren-Scharf Asphalt Paving Company, a corporation which was an unsuccessful competitor in the bidding for the contract set out in the bill, and this bill is filed at the instance, suggestion and request of the said Warren-Scharf Asphalt Paving Company, and for its use; the said company bears the cost and expense thereof, and the bill is therefore a collusive one. . . . . Had it not been that the plaintiff was willing to allow his name to be used by the Warren-Scharf Asphalt Paving Company, in the filing of this bill, so that the said paving company could under cover of his name file this bill, as these defendants verily believe it ·never would have been filed."

The case having been heard on bill and answers, the court, EWING, P. J., filed an opinion in·part as follows:

This case was set down by complainant's counsel on the bill of complaint and the answers thereto. We therefore assume

Opinion of Court below.

as true all the averments of fact relevant to the issue contained in the answers, and which can be set up in an answer, whether they be responsive to the bill or independent matters of defence, but conclusions of law or fact, merely inferred therefrom by the defendants, are not conclusive.

The most difficult, and as seems to us the only doubtful question in the case, is raised by the averment in the answer of Booth & Flinn as to plaintiff, to wit: " That the bill is not filed in good faith by the plaintiff, but on the contrary thereof he is merely a cover; and, in fact the said plaintiff represents the Warren-Scharf Asphalt Paving Company, which was an unsuccessful competitor in the bidding for the contract set out in the bill, and the bill is filed at the instance, suggestion and request of said company for its use; the said company bears the cost and expense thereof, and the bill is therefore a collusive one."

This defence is in the nature of a plea in abatement, and should have been so pleaded before answer: 1 Daniell's Ch., 630 ; Dinsmore v. Railroad Co., 19 Fed. R. 153 ; Williams v. Nottawa, 104 U. S. 209. By Rule 7 of our equity practice, such defence is excluded from the matters that may be set up in an answer.

But, assuming that the defence can be raised by answer, the pleadings admit the legal right of the plaintiff, that he is a citizen and tax-payer of the city, and that he is, and, before the beginning of the proceedings leading to the contract, he was a large property holder on the street to be improved, which property would be subject to a large assessment under the proceedings. His legal right to maintain the suit in his own name cannot be doubted.

On this state of facts, defendants' counsel argue that the bill is collusive and that it should therefore be dismissed as such, and cite in support of the proposition Robson v. Dodds, 8 Eq. Cas. 301, and Forrest v. Railway Co., 4 De G., F. & J. 126.

—After commenting on these cases, and also upon Sandford v. Railroad Co., 24 Pa. 378 ; Colman v. Railway Co., 10 Beav. 1 ; Ramsey v. Gould, 57 Barb. 398 ; Central R. Co. v. Collins, 40 Ga. 582 ; Bloxam v. Railway Co., 3 Ch. App. Cas. 236, and citing Lanier v. Nash, 121 U. S. 410, the opinion proceeded :

In the present case, the plaintiff has a clear legal right to

maintain his suit; he has a very substantial interest in the subject-matter thereof, and we are of the opinion that his motives therein are immaterial, and that the bill should not be dismissed even though other parties may be interested and may pay his costs.

Is. the contract complained of illegal? The answers effectually dispose of all allegations of fraudulent intent on part of any of the defendants. This leaves the contention to be decided on the naked question of power, or want of power, in the city authorities, to enter into the contract in question in the manner in which it was done. . . . . .

—The court here recited the facts appearing upon the bill and answers, and continued:

From the answers and from the argument, I understand that the specifications for the stone pavement referred to were not special to Craig street, but general specifications applicable to all streets. This, however, is not material.

As to asphalt pavements, the charges in the bill are substantially admitted. The contract was awarded for a kind of pavement which was not called for in the ordinance, and which was not advertised for; but, on the contrary, taking the notice in the advertisement that " plans and specifications for the paving could be seen, and blanks for bidding could be had at the office," in connection with the averment in the answer that there " were specifications for three kinds of stone pavement on file at the office," and no specifications for an asphalt pavement, it was an exclusion of proposals for asphalt pavement. The office blanks for bidding were based on specifications on file in the office, and so state in terms. How the contract for an asphalt pavement could be let under these circumstances, in conformity with the act of assembly, we are unable to see. How there could be "a lowest bidder" with nothing to bid on, is past our understanding. This case has been very ably argued by experienced and astute counsel, and we have not been referred to any case where the law has required such a contract to be let to the lowest bidder and no specifications have been furnished to bid upon, that the contract has been sustained. Numerous cases have been cited in which an attempt to award a contract in a manner similar to that shown in the present case has been set aside. . . . . .

Opinion of Court below.

—Citing, People v. Paving Co., 43 N. Y. 227; Bilger v. Mayor, 5 Abb. N. C. 51; Wells v. Burnham, 20 Wis. 112; People v. Commissioners, 4 Neb. 150; Boren v. Commissioners, 21 Ohio St. 311; State v. Barlow, 48 Mo. 17; In re Eagen, 46 N. Y. 100; and Attorney General v. Detroit, 26 Mich. 264, the court proceeded:

It is argued by counsel for defendants, that because in several of the cases above cited, the act of assembly under which the contracts had been let required plans and specifications, they are not applicable to the facts in this case, where the act of assembly is silent on that point. This objection will not apply to the Nebraska or the Wisconsin cases, and it will be found on examination of the other cases that the reason of the decision is put on the ground that without specifications to bid on there can be no competitive bidding such as is required to award a contract to the lowest bidder. But, in our case, the city ordinances, where not in conflict with the acts of assembly, are equally binding on the departments as are the acts of assembly.

The ordinance to carry into effect the act of June 14, 1887, as above quoted, provides that "all contracts shall be awarded after due public notice, as now required by law, upon such specifications as shall be approved by the Department of Awards."

Counsel for defendants argue that these plans and specifications may for the first time be made public when the contract is let, and that they have no reference to the bids called for by advertisement. We cannot read the ordinance in that way. Read in connection with the acts of assembly and other ordinances, or read by itself, it plainly means and refers to plans and specifications prepared for competitive bidding. It imposes on the Department of Awards the duty of seeing that the plans and specifications on which the accepted bid has been made, are right and proper, and if not so found all the bids should be rejected. Whether or not that department, as such, has any duty to perform in approving plans and specifications before the bids are advertised for, it is not necessary to decide.

Neither from the ordinance authorizing the paving and curbing of Craig street, nor from the advertisement; nor from plans and specifications on file in any office of the city departments; nor from all combined, was there any notice or intimation that any proposal for an asphalt pavement was either desired or would be

Arguments.

received.   Any such information obtained by a bidder was private information.   There was no advertisement for bids competing in kinds of pavement other than the three kinds of stone pavement for which there were plans and specifications.   For these reasons, the contract was beyond the power of the city authorities to make, and, regardless of their good intentions, the contract must be set aside.   The Department of Awards was not bound to award the contract on the  day the bids were opened.

Let a decree be drawn in accordance with these conclusions; the city of Pittsburgh to pay the costs.

A formal decree adjudging the contract between the city of Pittsburgh and Booth & Flinn, for the paving and curbing of Craig street, to be illegal, null and void; awarding an injunction against the doing of any work in the paving or curbing of said street thereunder, and directing that the city pay the costs of the case, having been entered, the defendants took this appeal, specifying that the court erred:

1. In entering said decree.

2. In not entering a decree dismissing the plaintiff's bill at his cost.

*Mr. D. T. Watson* (with him *Mr. W. C. Moreland*, City Solicitor), for the appellants:

1. The case having been heard on bill and answers, all the averments in the answers, whether responsive or not, are to be taken as true and considered in making the decision: Langdell's Eq. Pl., § 63; 1 Daniell's Ch., 845; Philadelphia's App., 78 Pa. 38.   As a petitioner for the discretionary interference of a chancellor, the plaintiff was bound to come into court with a sincere and unsimulated complaint of a wrong to himself, and not as the mere puppet of and cover for another.   The Warren-Scharf company could not itself maintain this bill: Commonwealth v. Mitchell, 82 Pa. 350.   The bill is admittedly filed, not to right any grievance Mazet has, but solely on behalf and for the use of the Warren-Scharf company, and Mazet is confessedly merely its puppet or dummy.   The company cannot maintain the bill thus in his name, and the attempt to do so is a fraud upon the court.

2. The court below, when this trick was disclosed, held that such a fraud would not be noticed by the chancellor, unless set up by plea in abatement; and, further, that all the averments on that subject in the answers, as they showed only the motive of the plaintiff in filing the bill, were immaterial. Such is not the law in Pennsylvania. The authorities against this ruling are: Kenton v. Railway Co., 54 Pa. 401; Camblos v. Railroad Co., 4 Brewst. 592; Filder v. Railway Co., 1 Hem. & Mil. 489; Forrest v. Railway Co., 4 De G., F. & J. 125; Robson v. Dodds, 8 Eq. Cas. 301; Belmont v. Railway Co., 52 Barb. 662; Wallesbury v. Express Co., 50 Barb. 157; Kerr on Injunctions, 25, 169, 480; High on Injunctions, § 1550; Daniell's Ch., §§ 244, 245. It is but lately that a tax-payer's right to file such a bill as this was settled, but, in the doctrine of the court below allowing an unsuccessful bidder to use a tax-payer's name for this purpose, we have a new equitable principle. Upon this question the answers can be considered together: Mills v. Gore, 20 Pick. 34; Field v. Holland, 6 Cranch 24. The plaintiff has solemnly admitted of record that the averments of each are true.

3. Neither the charter of the city of Pittsburgh, nor any other law applicable thereto, requires, as a condition precedent to the making of a contract, that specifications of a particular kind of pavement should be prepared prior to advertisement for bids. On the contrary, the act of May 23, 1874, P. L. 230, commits to the city the discretionary power of determining the best mode of receiving bids, and, in the absence of fraud, the courts cannot interfere. This has been repeatedly decided by this court. The decision of the court below, that under the act of 1874, this contract was void for want of specifications prepared before the bidding, is the more remarkable, in view of the admitted fact that the mode adopted by the city was the best possible one to secure the widest and fairest competition, and that by following it the city secured a better and cheaper pavement than it could otherwise have done.

4. The court also held that specifications prior to the bidding, were required by the ordinance of December 17, 1887, and that therefore that ordinance rendered this contract void. Two answers suggest themselves: (a) If an ordinance enacted by the city had contained such a requirement, the city could

Arguments.

waive it, if an honest benefit was conferred upon the city by such waiver; but, (*b*) the ordinance of 1887 manifestly contemplates that the Department of Awards shall have nothing to do with specifications until they meet to let the contract, and that the specifications shall be approved by the department before the contract is let, but not prior to the taking of the bids. An examination of the cases, cited by the court below as ruling that specifications before bidding are conditions precedent to the granting of a contract, will show that all of them, except the Nebraska case, turned on the express requirements of a statute; and in that case the chief justice dissented.

5. It is useless, however, to examine the cases cited by the court below, because the present case involves a construction of the act of May 23, 1874, P. L. 230, which has been repeatedly before this court, and it is well settled that the question of the letting of a contract, under that act, is a matter for the discretion of the city, and not of the courts, and that the only question for the latter is that of fraud: Commonwealth v. Mitchell, 82 Pa. 343; Findley v. Pittsburgh, 82 Pa. 351; Douglass v. Commonwealth, 108 Pa. 559; McCallin's App., 1 Mona. 596. Equity will not interfere at the suit of a tax-payer, except to prevent a property loss arising to him from a wrong perpetrated upon him: Sparhawk v. Railway Co., 54 Pa. 401. To hold that a tax-payer may at any time file a bill, and for a mere irregularity have any contract or ordinance of the city annulled, would be a most mischievous rule, and would open wide the flood-gates of litigation. This has never been the rule in Pennsylvania: Cooley on Taxation, 540, 541, n. 1; Wheeler v. Philadelphia, 77 Pa. 346; Page v. Allen, 58 Pa. 344; Sharpless v. Philadelphia, 21 Pa. 158.

*Mr. P. C. Knox* (with him *Mr. Johns McCleave* and *Mr. James H. Reed*), for the appellee:

1. The purpose of § 6, act of May 23, 1874, P. L. 230, is manifestly to secure competition in bidding on the price of work to be done, and to that end it is absolutely necessary that the bidder should know beforehand exactly what kind of work is to be done. Any other course opens the door wide for fraud and jobbery of all kinds. There are numerous decisions in other states upon the requirements of similar statutes,

Opinion of the Court.

and in none of them did the method adopted in this case succeed: People v. Board of Improvement, 43 N. Y. 227; Bigler v. Mayor, 5 Abb., N. C, 51; Wells v. Burnham, 20 Wis. 112; People v. Commissioners, 4 Neb. 150; Boren v. Commissioners, 21 Ohio St. 311; State v. Barlow, 48 Mo. 17; In re Eagen, 46 N. Y. 100.

2. The two answers filed in this case cannot be read together, the one to supplement the other where deficient. The answer of a defendant is not evidence for his co-defendant: Larkins's App., 38 Pa. 457. The allegations as to the bad faith of the plaintiff should have been pleaded in abatement: Story's Eq. Pl., § 722; Rule 7, Equity Rules; 1 Daniell's Ch., 630; Dinsmore v. Railroad Co., 19 Fed. R. 109; Brightley's Eq., 476; Sandford v. Railroad Co., 24 Pa. 379. But the plaintiff's motive is immaterial: Colman v. Railway Co., 10 Beav. 1; Ramsey v. Gould, 57 Barb. 398; Central R. Co. v. Collins, 40 Ga. 582; Bloxam v. Railway Co., 3 Ch. App. Cas. 236; Lanier v. Nash, 121 U. S. 410. There is a substantial distinction between a case like Kenton v. Railway Co., 54 Pa. 452, and one where the plaintiff had, at the time of the grievance, an undeniable and substantial interest, and is moved to act at the suggestion and instance of another. This distinction is recognized in cases cited by the appellants.

OPINION, MR. JUSTICE STERRETT:

One of the specifications is aimed generally at the decree; the other alleges error in not dismissing the bill. They are both as general as it is possible to make them, but it clearly appears from the record and argument of counsel that appellants rest their contention on two propositions: first, that the contract in question was regularly awarded in accordance with the charter and ordinances of the city, and is therefore neither void nor voidable; second, that, for reasons stated in the answers, the plaintiff has no standing in court.

After a careful consideration of the questions involved, the learned president of the Common Pleas, in a well-considered opinion, rightly decided that neither of these propositions was tenable, and entered a decree declaring that the contract in question, made and entered into between the city of Pittsburgh and Booth & Flinn, "for the paving and curbing of Craig

street, is illegal, null, and void," and enjoining the "defendants, and each and every of them, their and each of their officers, agents, and servants, from doing any work in the paving and curbing of said Craig street under, in pursuance, or by virtue of, said contract." This action of the court is so fully vindicated in its opinion, that for reasons there given we are satisfied there is no error in the decree, and it should therefore be affirmed.

The cause was set down and disposed of on the bill and answers. In such cases, the rule is that all material and relevant averments of fact, contained in and proper for answer, must be accepted as true, whether the same be responsive to the bill or independent matter of defence; but, of course, inferences, either of law or fact, drawn by defendants from their own averments, are not within the rule. Such inferences are solely for the court.

The allegations of fraudulent intent in making the contract, etc., were eliminated from the case by explicit denials thereof in the answers. The inquiry was thus narrowed to the naked question of power, or want of power, in the city authorities to enter into the contract in question in the manner in which it was done; and that, of course, depended on the law and ordinances of the city applicable to such contracts.

The act of May, 1874, provides that all work and materials required by the city "shall be performed and furnished under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance, and it shall be the duty of councils forthwith to enact such ordinances." The ordinance, passed in pursuance of this requirement, provides, inter alia, that all contracts exceeding in value $50 shall be let or entered into only after proposals therefor shall have been inserted by advertisement in the official newspapers of the city for not less than five days. A subsequent ordinance declares that all contracts shall be awarded after due public notice, as now provided by law, upon such specifications as shall be approved by the Department of Awards. It cannot be doubted that the true intent of the act of 1874, and the ordinances passed in pursuance thereof, regulating the awarding of public contracts, is to secure to the city the benefit and advantage of fair and just competition between bidders, and at

the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms. To that end, it is essential that there should be plans and specifications on which to bid; otherwise there can be no competitive bidding.

The ordinance of August, 1888, authorizing the chief of the Department of Public Works to invite proposals for paving and curbing Craig street, is silent as to the kind and quality of the paving and curbing to be contracted for. The advertisement is also silent as to those matters; but it does announce that "plans and specifications can be seen, and blanks for bidding can be had, at this office," meaning the office of the chief of the Department of Public Works. The bill charges that at no time before bids were received were there any plans or specifications for the work of paving Craig street at the said office, or prepared by any department of the city, or on file, or open to inspection by parties proposing to bid, etc.; and that the said chief of the Department of Public Works refused to exhibit any plans and specifications, and directed such persons to prepare their own specifications to be inclosed with their bids. The answer asserts that there were plans, etc.; that "this plan showed the surface of the street; the street as it had been prepared by grading; the number of square feet of paving to be done; the number of lineal feet of curbing to be done; and the specifications embraced paving with cobble-stone, paving with irregular block-stone, and paving with block-stone. There were no specifications as to what is called asphalt pavement." It is not alleged that the specifications for stone pavements, above referred to, were special to Craig street. On the contrary, it may be fairly assumed that they were general specifications applicable to all streets. This contention relates to bids for asphalt pavements, and, as to that kind of pavement, the charges in the seventh paragraph of the bill are virtually admitted. We have then, as correctly found by the court below, these facts, viz.: There were no specifications whatever special to Craig street, except the plan showing the surface of the street as it had been prepared by grading, the number of square feet of paving to be done, and the number of linear feet of curbing to be set. As admitted by the answer, "there were no specifications as to what is called an asphalt pavement." As to that kind of pavement, bidders were directed, as charged in

Opinion of the Court.

the bill, to prepare their own specifications, and that was accordingly done by each of the bidders. For the kinds of stone pavement for which the answer avers there were plans and specifications in the office, no bids whatever were received. The contract was awarded to the defendants Booth & Flinn, on their own specifications, for what is called a "vulcanite asphalt pavement," a kind of pavement neither called for in the ordinance, nor even hinted at in the advertisement inviting bids. On the contrary, taking the notice in the advertisement, that plans and specifications for paving could be seen, and blanks for bidding could be had at the office, in connection with the averment in the answer that there "were specifications for three kinds of stone pavement on file in the office," and no specifications for an asphalt pavement, it follows that proposals for the latter were virtually excluded.

In the face of the facts above referred to, all of which appear in the pleadings, it is idle to contend that the contract in question was regularly awarded in accordance with the charter and ordinances of the city. The charter requires contracts "to be given to the lowest responsible bidder." How can there be a *lowest* bidder, when parties proposing to bid are instructed to prepare their own specifications and submit them with their respective bids? The expression, "lowest bidder," necessarily implies a common standard by which to measure the respective bids, and that common standard must necessarily be previously prepared specifications of the work to be done, and materials to be furnished, etc., specifications freely accessible to all who may desire to compete for the contract, and upon which alone their respective bids must be based. The court was therefore clearly right, in pronouncing the contract in question "illegal, null, and void." Not a respectable authority can be anywhere found to sustain it as a valid contract, under any system of competitive bidding such as the charter and ordinances of the city of Pittsburgh require.

Appellants' second proposition, that plaintiff has no standing in court, etc., is equally untenable. In the first paragraph of the bill he avers "that he is a citizen and resident of the city of Pittsburgh, and is a tax-payer of said city, paying annually to said city in taxes, by it lawfully assessed, a large sum of money, to wit, the sum of seven hundred dollars; that he is,

### Opinion of the Court.

and has been for and during all the time of the happening of the things hereinafter complained of, the owner of certain lands lying and being in the fourteenth ward of said city, abutting upon the easterly side of Craig street, and extending along and upon said street for a distance of four hundred feet, more or less, between Center Avenue and Bayard street." These facts, which are admitted by the defendants in their answers to be true, give the plaintiff a standing in court which cannot be successfully challenged by any averments in the answer, such as that " the bill is not filed in good faith by the plaintiff, but on the contrary thereof he is merely a cover;" that he represents another paving company, at whose instance the bill was filed, etc. If it appeared that plaintiff was a mere volunteer, without direct personal interest in the controversy, or that he had bought his way into it since the acts complained of occurred, his position would be different, and the authorities relied on by defendants might be invoked with some show of reason; but he avers, and they admit, that he has and is a property owner on the street, and as such liable to be assessed for paving, etc., or liable, in common with the general public, to be taxed to pay for the work; in short, that he has a direct and substantial pecuniary interest in the controversy, and has had from the beginning of the proceedings which resulted in awarding the illegal contract. The right of the plaintiff to maintain the suit cannot be seriously doubted.

. We also agree with the court below that the question of plaintiff's standing in court should have been raised by plea in the nature of a plea in abatement; but, in whatever form that defence may be interposed, there is nothing in the facts of this case to sustain it. The questions involved are so fully and satisfactorily considered in the opinion of the court below that further elaboration is unnecessary.

> Decree affirmed and appeal dismissed, at the costs of the appellants.