# GEORGE W. KONIG

## vs.

# THE MAYOR AND CITY COUNCIL OF BALTIMORE

### ET AL.

*Municipal contracts: technical violation of charter; benefit to city; injunctions; actions of party pending—.*
*Ignorance of the law. Equity.*

In general, once equity acquires jurisdiction over the parties on an application for an injunction, they can not deprive it of jurisdiction by doing, before the Court acts, that which the Court was prayed to enjoin; and should that be done it may require restoration and compensation, should the pleadings and evidence authorize such relief.                                    p. 472

But there may be conditions which would not only make it futile to grant an injunction, but inequitable and unjust to require restoration or compensation, such as is sought.    p. 472.

The mere fact that a municipality can make a good bargain does not authorize it to violate its charter; yet when it clearly appears that the act involves no loss, but actually results in a decided benefit to the city and that the violation of the charter is only a technical one, involving only unintentional mistake, equity should not deal with the case precisely as though there had been a deliberate and inexcusable violation of law, especially if the latter was accompanied by fraud, collusion, or unjust treatment of others.                                    p. 473.

Where a taxpayer, as complainant, seeks by an injunction to restrain a contractor from executing or completing a construction under a contract with a municipal corporation, and where the injunction suit, if successful, might cause the contractor great loss and ruin, every principle of equity demands that the complainant should use diligence in the prosecution of his suit.
                                    p. 475.

466 KONIG *vs.* M. & C. C. OF BALT.

Failure to prosecute with diligence a suit actually commenced may constitute *laches,* as well as any delay in commencing a suit. p. 474

Where a contract for the construction of a public filtration plant is entered into by a contractor and a municipality, honestly on both sides, and with no intention of violating the law, and yet the contract is in conflict with the city's charter powers, then, after the work is done, courts should not be zealous in depriving the contractor of his pay or profits, when it is not shown or claimed that it was otherwise than well done, but shown to be of great benefit to the public, and when the taxpayer who brings the suit shows no injury to himself or to the city, and who after merely instituting such a suit used no diligence in bringing it to a conclusion. p. 475

While ignorance of the law is not a valid excuse, contractors engaged in work all over the country can not be supposed to keep familiar with every detail of municipal charters. p. 476

*Decided April 26th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar Allan Poe* and *Morris M. Townley* (with whom were *Bartlett, Claggett & Bland,* on the brief), for the appellants.

*S. S. Field (the City Solicitor for Baltimore City)* and *Richard S. Culbreth,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

In *Konig v. M. & C. C. of Baltimore,* 126 Md. 606, we decided that the contract involved in this controversy was invalid because it was not made in accordance with the requirements of the charter. The Board of Awards advertised for bids for a "Filter Equipment," which the Legislature had duly authorized the Mayor and City Council of Baltimore to build. Seventeen items were named in the specifications and the bidders were required to give the price of each item (the first being in the alternative for Item 1-A and Item 1-B). Paragraphs 10 and 11 of the specifications were as follows:

"Bids for Alternative Item: (10) Bidders must summit bids on both of the alternative Items, 1-A and 1-B. The Board of Awards reserves the right to accept either one of the alternative Items in connection with the other items of this contract.

"Statement of Quantities: (11) The following is a statement of the work required under this contract, and the items given below will be used as a basis in comparing the several bids, viz:

"Item 1-A.   For Strainer System (Alternative Item).

"Item 1-B.   For Strainer System (Alternative Item).

"Item    2.   For 32 Filter Rate Controllers";

and then the several items from Item 3 to Item 17, inclusive, are given—all being set out in 126 Md., page 609. Items 1-A and 1-B are more particularly referred to, but it is sufficient to say that Item 1-A involved the use of a process called "Negative Head," and the Water Engineer of the City said that "Item 1-B was designed by him with the view of avoiding the 'Negative Head' process, that the cost of the two systems, aside from the cost 'of any patent license would be practically the same,' except that Item 1-B would involve the additional cost of putting on some pipes. It was also alleged in the bill and evidence was offered tending to

show that the process called 'Negative Head' was a patented process, the patent for which belonged to the New York Continental Jewell Filtration Company, and that the Norwood Engineering Company and the Pittsburg Filter Manufacturing Company were licensed to use that process."

The bids for the work were as follows:

|  | Item 1-A. | Item 1-B. |
|---|---|---|
| "M. L. Bayard................ | $323,071.75 | $150,071.75 |
| American Water Softener Co... | 156,832.85 | 156,832.85 |
| Norwood Engineering Co...... | 222,854.38 | 223,752.38 |
| Pittsburg Filter Mfg. Co....... | 238,591.00 | 239,591.00." |

The American Water Softener Company submitted with its bid a communication to the Board of Awards in which it stated that should the contract be awarded to it, and the letters patent referred to be sustained in the appeal taken by the City of Harrisburg in the case of *New York Continental Jewell Filtration Company* v. *that City,* and should an injunction to restrain the City and them from constructing and equipping the Baltimore filters as per the plans and specifications be applied for and granted, "then the filters shall be equipped and operated with the 'device of venting filter effluents,' as shown on the City's drawing No. 161-A-4, and at the price named in our bid for Item 1-B, until the expiration of said Letters Patent, and at which time we shall remove the vent pipes, free of charge, if the City should desire us to do so."

The Water Engineer submitted his report and tabulation of bids to the Boards of Awards, accompanied by a letter set out in full in the former opinion. He stated that for the reasons given the American Water Softener Company should be considered the lowest responsible bidder. The Board of Awards after hearing counsel for the other bidders awarded the contract to that company, "reserving the right of requiring the construction of the contract under the direction of the Water Engineer, in accordance with either Item 1-A or Item 1-B as may be directed." A contract was entered into

on March 20, 1914, between the Board of Awards and the American Water Softener Company, reserving the right to require the work to be in accordance with either alternative, Item 1-A or Item 1-B. On April 8th, 1914, before the work was begun, the plaintiff, a tax-payer, filed a bill on his own behalf "and on behalf of all other property owners and tax-payers of Baltimore City who may care to come into and avail themselves of this suit and proceeding," for an injunction against the City, the members of the Board of Awards, the Water Engineer, and the American Water Softener Company. An order was passed to show cause why the writ should not issue, a decree *pro-confesso* was obtained against the contractor, the other defendants answered, evidence was taken, and on March 25th, 1915, the Court below passed the decree from which the former appeal was taken—whereby the bill of complaint was dismissed.

We held "that the proposal of the American Water Softener Company was not submitted in accordance with the specifications, and that the contract awarded to that company and entered into by it and the City was not the contract or *thing* for which bids or proposals were invited by the advertisement, or for which there was competitive bidding," and declared the contract invalid. The case was remanded and the plaintiff then made application for the injunction—pursuant to the mandate as he claimed. Testimony was taken before the Court, and after reciting his reasons, the learned Judge below passed the decree from which this appeal was taken. It is dated the 17th day of July, 1915, and "adjudged, ordered and decreed that the contract of March 20, 1914, between the Mayor and City Council of Baltimore and the American Water Softener Company, be and it is hereby declared to be null and void, but that the prayer for an injunction, be and the same is hereby denied and refused, without prejudice, however, to the right of the plaintiff to proceed further in this cause, or to have, seek, institute or prosecute any other suit, action, proceeding or remedy, to

which he may otherwise be entitled; and it is further ordered that the cost of this proceeding be paid by the defendants."

The appeal from that decree was duly heard by us, but the Court of its own motion, owing to differences in the views of the Judges who sat, ordered a reargument, which was heard by all of the members of the Court. Although some of them have been unable to concur, the majority have determined that under the circumstances the proper disposition of the case is as hereinafter announced. It may be well to here say that it is not our purpose to change the conclusion reached by us in 126 Md., as was argued by the appellees could properly be done by reason of evidence offered after the case was remanded. That opinion concluded as follows: "For the reasons stated we think the plaintiff was entitled to have the contract annulled and the performance and execution thereof enjoined, and we must therefore reverse the decree of the Court below and remand the cause.

But in view of the fact that the contract was partly executed at the time of the trial of the case in the Court below, and the statement of counsel that it would probably be fully executed and completed before the case was decided by this Court, the extent to which relief by injunction may be granted, and the terms of the injunction, if any, that should be issued by the Court below must depend upon the status of the parties to the contract with reference to the performance thereof when the cause reaches that Court."

The lower Court filed an opinion setting out the facts found by it from the evidence taken after the cause was remanded, and concluded it by saying: "And inasmuch as the highest Court of this State, while declaring the contract in controversy to be utterly void, at the same time imposed upon this Court the responsibility of determining 'the extent to which relief by injunction may be granted and the terms of the injunction, if any, that should be issued,' and this Court is of opinion that the advantage to the plaintiff or any other tax-payer from an injunction prohibiting any further performance of the said contract, and therefore neces-

KONIG vs. M. & C. C. OF BALT. 471

Md.] Opinion of the Court.

sarily delaying the completion of the filtration plant at the very period of the year when it is most needed, would be inconsiderable in comparison with the loss and damage thereby occasioned to the 'parties to the contract,' and, above all else, in comparison with the risk of danger to the public health from any delay, however brief, at this season." It then passed the decree quoted above.

Although it was not intended by us by what was said in the opinion in 126 Md. to leave to the discretion of the lower Court the question whether any injunction should issue, if the contract was not completed, yet in justice to that Court it must be said that inasmuch as it reached the conclusions stated by it as to what had been done, and as to the importance to the health of the people of a speedy completion of the work, and as it had the understanding, referred to above, of the responsibility imposed on it by this Court, it can well be understood why the learned Judge hesitated to issue an injunction—especially as his refusal to do so was without prejudice to the plaintiff proceeding in some other way. But as the case is now before us, there is something more than whether the Court should have refused to grant an injunction on July 17, 1915, when the decree appealed from was passed.

We understood it to be conceded at the re-hearing that the contract was then completed on the part of the contractor. Indeed it was said in the appellant's brief filed at the October Term that, "at this time, it probably may be assumed that the contractor has fully performed the contract on his part, although a substantial part of the contract price may still be retained by the City," and in the City's brief at that term it was said, "at the present time the entire work has been completed, the City is in possession of the completed work, and the people of Baltimore are enjoying the benefit of pure filtered water." The appellant's contention may be seen by reference to the above mentioned brief, following what we have quoted, where it goes on to say: "If any part of the contract price remains unpaid, its payment should be

enjoined. To the extent to which the contract price has been paid there should be a decree directing the American Water Softener Company to pay the amounts of such wrongful payments, with interest, to the clerk of the lower Court, for repayment into the public treasury upon such terms and conditions as may be proper to safeguard the interests of complainant and the public. That complainant is entitled to this relief follows directly from the previous ruling of this Court to the effect 'that the acts of the parties after the bill was filed can not deprive the Court of its jurisdiction.' "

Of course there can be no doubt about the general doctrine that after a Court of Equity has acquired jurisdiction over the parties in an application for an injunction they can not ordinarily deprive it of jurisdiction by doing, what was sought to be enjoined, before the Court acts, and that it may in proper cases require restoration or compensation—provided the pleadings and evidence authorize such relief. But there may be conditions which would not only make it futile to grant an injunction, but inequitable and unjust to require restoration or compensation such as is sought. We did not intend to commit ourselves by what we said in the former opinion to the granting of such relief as is now claimed, and if we had so intended we would have said so. In this case there are circumstances which unquestionably require a Court of Equity to proceed with extreme caution in determining what relief can properly be granted. While it is no longer an open question whether the contract was validly made, as our previous decision has settled that, it was not free from doubt before we decided it, and there was at least some ground for the belief that the contract was valid. It is not going too far to say that although we held it to be a violation of the charter, it was of a technical character. Not only the City law department, but the lower Court believed it to be valid. In point of fact the action of the Board of Awards in receiving the communication from the American Water Softener Company and in making the contract with the reservation referred to above, did not, and,

unless we shut our eyes to the facts in the record, we may go further and say, *could not,* well result in favoritism or undue advantage to that company, for the reason that the evidence shows that the difference between the cost of the work, whether done under Item 1-A or Item 1-B, would not be more than $500, according to the appellees' testimony, and $1,000, according to that of the appellant, and the next lowest bid was over $66,000 higher than that of this company. That bid was of the Norwood Engineering Company, and that of the Pittsburg Filter Mfg. Co. was more than $80,000 higher. Those companies were licensed to use the patented process, and the difference in the bids for Item 1-A and Item 1-B by the former was about $900.00 and in those of the latter $1000.00. We do not deem it necessary to discuss the bids of M. L. Bayard as the Board of Awards had the right to decide whether he was a responsible bidder, and as in bidding he made a difference of $173,000 between his bid for Item 1-A and that for Item 1-B, more than double the bid of the American Company, $100,000.00 more than that of the Norwood Engineering Company for Item 1-A, and over $84,000.00 more than that of the Pittsburg Filter Mfg. Co., the Board can not be said to have had no ground for its action in reference to his bid, even if we were authorized to review it.

While the mere fact that a municipality can make a good bargain does not authorize it to violate its charter, yet when it so clearly appears as it does in this case, that it was not only no loss, but a very decided benefit to the City to make the contract with the American Company, and that the violation of the charter was of a character which indicates an honest mistake and not that it was intentional, a Court of Equity ought not to be required to deal with such a case precisely as it would with one where there was a deliberate and wholly inexcusable violation of law, especially if the latter showed fraud, collusion or unjust treatment of others.

As the contract is now completed on the part of the contractor, it would be useless to issue an injunction to restrain

its execution, and certainly no good can be accomplished for·
the plaintiff and the people of Baltimore by a mandatory
injunction requiring the American Company to remove the
plant it installed. Indeed, the appellant cited authorities to·
show it should not be allowed to do so. But as the testi-
mony taken after the case was remanded showed that the·
City had in hand a considerable sum for work already done,
and that the value of the work yet to be done for the·
mechanical part was $2,590.12, and for the sand and gravel
$30,717.90, all of which work the appellees concede has been
finished and is now in use by the City, we have the right to·
assume that a large sum of money is still withheld from the
contractor. The real question, therefore, is, what compensa-·
tion, if any, should be decreed?

In addition to what we have already said, there are a
number of facts and circumstances which tend to show that
the plaintiff's claim of right to have all of the part of the·
contract-price, which remains unpaid, enjoined, and to have·
a decree directing the American Company to refund the
amounts already paid it, with interest, is without merit, and
it would, in our judgment, be inequitable and unjust to pass·
such a decree. In the first place, although his bill was filed
April 8th, 1914, and an order to show cause was answered
by the appellees April 21st, nothing was done until Novem-
ber 27th when a decree *pro confesso* was taken (but no in-
junction issued) against the American Company and on
November 30th a general replication was filed. Over seven
months and a half thus elapsed before the plaintiff made a
move after filing his bill, although he must have known
that the contractor was engaged in the performance of its·
contract and that by the terms of it it was liable to heavy
damages if it did not complete it as it required. In *Phelps'*·
*Jurid. Eq.,* sec. 262, it is said: "There may be laches in
the failure to prosecute with diligence a suit actually com-
menced as well as by delay in commencing a suit." Although
we do not mean to intimate that such lapse of time as we·
have referred to would authorize us to say that the defense

of laches could be a bar, time is a circumstance to be taken into consideration in determining the relief to be given as the case is now presented. This contractor had the taxpayer on the one side alleging in his bill that the contract was invalid, but taking no steps to establish his claim, and the City on the other side claiming it was valid and insisting upon performance—the contract requiring it to begin work within ten days and to complete certain parts by May 15th, 1915, and to have it fully completed not later than December 1st, 1915. According to plaintiff's position it was liable to lose *if it did,* and by its contract it was liable to lose *if it did not.* Yet although the plaintiff did nothing with his suit for over half of the year in which the contractor was required to perform certain parts of the work, he now demands that the contractor get nothing for what it did. If a plaintiff can simply file a bill of this kind and thus secure the right to such relief as is now contended for, in the event that he ultimately succeeds in having the contract declared invalid, every principle of equity demands that he proceed with diligence.

In January the evidence was begun and on March 26th, 1915, the bill was dismissed by the lower Court—a year after the contract had been entered into. The appellant took an appeal, but did not file a bond to stay the operation of the decree, as authorized by Section 29 of Article 5. It certainly can not be claimed that after the lower Court had dismissed the bill the contractor was censurable for proceeding with the work. It was its duty under the contract to proceed, and if it had declined to do so, and this Court had affirmed the decree, it would have been in an unfortunate position if the City demanded the damages for delay provided for by the contract—$50.00 a day. The decree was reversed by us on the 24th of June, 1915, but when application was made to have an injunction issue, the lower Court declined to do so, and no injunction has ever been issued. The appeal from that decree is the one now before us. No bond was filed by the plaintiff to suspend the operation of

that decree, and the contractor proceeded with the work to its completion. If a contractor is to be liable to have all the money yet unpaid him enjoined, and to be compelled to refund all he has received, under such circumstances as we have thus far stated, then it is amazing that bids can be obtained from responsible contractors for work for municipalities. While ignorance of the law is not a valid excuse, contractors engaged in work over the country can not be expected to be familiar with every detail of city and town charters. It takes an alert lawyer to keep pace with the changes constantly being made in them, and if the position of the appellant must be sustained, it seems to us that it must result in one of two things with responsible contractors—they must either refuse to bid at all, or must bid high enough to cover such contingencies—thus injuring, instead of benefiting all tax-payers of such municipalities.

There have been many cases in this Court, involving contracts with municipalities, beginning with *Baltimore* v. *Eschbach,* 18 Md. 276, and including amongst others, *Baltimore* v. *Gill,* 31 Md. 375; *Baltimore* v. *Keyser,* 72 Md. 106; *Packard* v. *Hayes,* 94 Md. 233; *Baltimore* v. *Flack,* 104 Md. 107, the former appeal in this case in 126 Md. 606, where JUDGE THOMAS carefully and ably considered many authorities, and although in some of those decisions, forcible language was used in announcing the well settled general doctrines, in regard to contracts with municipalities, and cogent reasons were given for holding municipal officers and those who contract with them to strict accountability and for granting relief to tax-payers, there has been no decision in this Court which, in our judgment, requires us to deprive a party to a contract, which we are satisfied was entered into by both sides honestly, and without the least intention of violating the law, of all the fruits of its labor and expenditures, and making a gift of them to the City, at the instance of a tax-payer who is not shown to have lost a penny, or to have been of any benefit to the municipality or its people, unless it be by securing for the City $156,000

KONIG vs. M. & C. C. OF BALT. 477

Md.]                    Opinion of the Court.

of property for nothing from a contractor who by the contract saved the City at least $66,000, if measured by the other bids, excluding that of Bayard, of which we have already spoken. Assuming that the bid of the latter was properly rejected, and there is nothing to show it was not, that of the American Company was so much lower than the others that it is difficult to believe that the bill of complaint was filed for the protection of the City, or because the plaintiff believed that he or any other tax-payer was in danger of loss by reason of the contract.

We are aware that it was said in *Packard* v. *Hayes,* 94 Md. 233, as it has been in other authorities, that the motives of tax-payers bringing such suits as this are immaterial, but we do not understand that to mean, as far as this Court is concerned, that in determining the relief to be given to a tax-payer we can not consider all the circumstances surrounding the contract. It certainly does not mean, when the question is as to what relief shall be granted, that he can be entitled to the same redress that he would be if he was really a sufferer, when he is not shown to have lost anything. In *Kelly Piet & Co.* v. *M. & C. C. of Baltimore,* 53 Md. 134, after referring to *Mayor, &c., of Baltimore* v. *Gill,* 31 Md. 393, which said the authorities were not altogether harmonious but sustained the right of a tax-payer to sue, the Court said: "It was only upon the principle that if such a remedy was denied, citizens and property holders, residing within the limits of a municipality, *would be liable to injury and damage* from unauthorized and illegal acts of the corporation, that the suit was sustained." In the case of *St. Mary's Industrial School* v. *Brown et al.,* 45 Md. 310, JUDGE ALVEY said that tax-payers could invoke the restraining powers of a Court of Equity, and that Court will entertain jurisdiction of their suit against municipal corporations and their officers when the latter "are shown to be acting *ultra vires,* or are assuming or exercising a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them, *and when such un-*

*authorized act may effect injuriously the rights and property of the parties complaining."*

While under the decisions a Court of Equity may grant relief to a tax-payer even if it is not satisfied that he is acting in good faith, or is influenced by proper motives, yet when it is called upon to determine what relief it will grant the plaintiff there is no reason why the Court should be compelled to shut its eyes and not see what the real facts are. This Court refused to grant to Kelly, Piet & Co. any relief, although they were tax-payers as well as bidders, because it was really a controversy between rival tradesmen for the custom of the City. Notwithstanding what we have said, the appellant claims to appear in this Court for the purpose of protecting himself and other tax-payers from loss, but no other tax-payer has within the two years since the bill was filed asked to be made a party. The Board of Awards can not be censured for endeavoring to save the City money in awarding the contract, if they believed they were complying with the charter. No other motive is suggested, and when we remember of whom the Board is composed, no improper motive will be presumed. Every principle of justice would prohibit an individual or a private corporation from profiting by such a mistake affecting an honest contractor, by keeping the fruits of the mistake without paying for them, and while the rules of law applicable to officers of municipal corporations are different from those governing private corporations, it would not be regarded by the public, for whose benefit such rules have been adopted, as just to deprive a contractor of all compensation for work done and accepted by the City under such circumstances as exist in this case.

Although the mere fact that a municipality obtained a good bargain does not excuse a violation of the requirements of the charter, yet a complainant in a bill in equity must have proper ground to stand on before he can demand that that Court give him relief. In 5 *McQ. on Mun. Cor.,* sec. 2586, it is said: "It is generally held, unless otherwise provided by statute, that a tax-payer can not sue to enjoin an

illegal or unauthorized act on the part of a municipality unless such act will result in an increase of his taxes or will otherwise result in direct or indirect pecuniary injury to him." The basis of our own decisions for permitting tax-payers to sue was their liability and that of the municipality to loss, and when a case has proceeded so far that the only live question is compensation *vel non*, it would be utterly illogical to grant relief beyond actual or possible loss to the tax-payer or municipality or both. See *Baltimore* v. *Gill*, 31 Md. 393; *St. Mary's Indust. School* v. *Brown*, 45 Md. 310; *Kelly, Piet & Co.* v. *Baltimore*, 53 Md. 134, and other Maryland cases.

The only difference between the alternative items in dollars and cents was, as has been seen, from $500 to $1000. If the bid of the American Water Softener Company had been accepted for either one of the items, instead of as it was, it would have been valid, and it offered to build either at the same price. If the Board of Awards had acted in strict accordance with the charter, and had after the bids were received determined upon one or the other of the alternative bids, it would doubtless have given the contract to the American Water Softener Company, as outside of Mr. Bayard, it was so far below the others as to make no question about that. Now because the Board was guilty of a mere irregularity, which did not cost the City anything, as the contractor offered to build either for the price named, but indeed saved it at least $66,000.00, the contractor who was so unfortunate as to save the City that sum or more is now asked by a tax-payer who claims to represent the people of Baltimore, to furnish the plant for nothing. We have examined case after case presenting various views of similar and analagous questions, and we must say that while the general principles have been announced and confirmed, there are very few, if any, authorities in which so unjust and inequitable a demand has been made as in this case, and we have found none where such relief has been granted to a

plaintiff who has so utterly failed to show any injury to himself or other tax-payer as the appellant has.

While it must be conceded that the weight of authority precludes a recovery by one relying on a contract made with a municipal corporation contrary to the provisions of its charter, either on the contract itself or on a *quantum meruit,* or *quantum valebat,* authorities are not entirely lacking to support such claim. In 3 *McQuillin on Municipal Corporations,* section 1181, on page 2624, it is said: "There is considerable authority, however, to support the rule that a recovery may be had on a *quantum meruit* in such cases, upon the theory that it is not justice, where a contract is entered into between a municipality and another, in good faith, and the corporation has received benefits thereunder, to permit the municipality to retain the benefits without paying the reasonable value therefor, the same as a private corporation or individual would have to do. And a municipality has been held liable, in many cases, for water or light furnished, where the exact ground for imposing liability, other than justice in a particular case, is not clear." But that is not the question in this case. The question here is whether a Court of Equity shall exercise its powers at the instance of one who has not shown that he or the City has lost anything, and deprive the Company which has spent $156,000.00 for the City, of the money already paid it, or what is still unpaid. Quite a number of cases have held that under such circumstances Courts of Equity should leave the parties in such transactions where they placed themselves, and will refuse to grant relief to either.

In this case the contractor is not seeking to recover, but a tax-payer asks that it be deprived of the entire contract price, for what we might use a term frequently used in this Court in another connection—"error without injury"—its error being entering into a contract which was supposed to be valid, and there being no injury, but on the contrary a benefit to the City resulting from that error.

KONIG vs. M. & C. C. OF BALT. 481

Md.]                    Opinion of the Court.

We are not unmindful of what our own Court and others for which we have the highest respect have said in reference to the importance of holding parties to municipal contracts to strict account, but being satisfied that our conclusion is not in conflict with any of our decisions, after giving the facts and circumstances of this case full consideration, we have concluded that the plaintiff is not entitled to more than the following relief:

As under our decisions there was a technical violation of the charter and taxpayers are authorized to complain of such violations, and to call upon a Court of Equity for such relief as in the judgment of the Court the circumstances authorize, we deem it proper that the appellant be protected from expenses connected with the proceeding, notwithstanding what we have said, and we will remand the case to the lower Court for a new decree. Understanding it to be conceded that the contract is completed on the part of the contractor, the decree shall recite that the injunction is not now directed to be issued, as the work on the contract has been completed, but that in lieu thereof such compensation be allowed as directed by this opinion. The lower Court shall ascertain how much of the contract price, to which the American Water Softener Company would be entitled but for this proceeding, is still in the hands of the City. If it find that it is sufficient the decree shall require the Mayor and City Council of Baltimore to pay out of such fund to the plaintiff the costs of this case, including the costs in this Court, and such fees for his solicitors, as the lower Court may allow—not to exceed, however, for said fees, the sum of $2000.00. It shall authorize the City to pay over to the contractor the balance in hand, retained by reason of this proceeding. If it appears that the City has not retained sufficient money from the contractor to pay said costs and fees, then the decree shall require the Mayor and City Council of Baltimore to pay them, not exceeding the amounts named above.

If either side contends that in point of fact the contract is not completed, then the lower Court shall determine that

question, after hearing, and, if it so finds, it shall grant an injunction to prohibit its completion.   Such determination and action shall not, however, affect what we have said in reference to what has already been paid or what is still in the hands of the City, for what has already been done, but that Court shall direct the payment to the American Water Softener Company of the balance in hand, after deducting the costs and the fees authorized to be allowed as hereinbefore provided for.

> *Decree reversed, and cause remanded for further proceedings, in accordance with this opinion, the costs to be paid as herein directed.*

Dissenting opinion by THOMAS, J.   (STOCKBRIDGE and CONSTABLE, JJ., concurring.)

As I can not, after a careful consideration of the case, concur in the conclusions of the Court, I feel, in view of the importance of the questions involved, that I should state my reasons for dissenting, with a reference to the authorities in support of what I regard as the proper disposition to be made of the case.

The bill of complaint in this case was filed by the appellant as a taxpayer and resident of Baltimore City, on his own behalf and on behalf of all other taxpayers and property owners of the City, against the Mayor and City Council of Baltimore, James H. Preston and others, members of the Board of Awards; Ezra B. Whitman, Water Engineer, and the American Water Softener Company.   The prayer of the bill was for the annulment of a contract for the construction of a filtration plant, and for a preliminary and permanent injunction restraining the defendants from doing anything in furtherance, performance or execution of the same.

From the decree of the Circuit Court No. 2 of Baltimore City dismissing the bill the plaintiff appealed, and this Court, upon the record of that appeal, held that the contract was void, and that the plaintiff was entitled to have it annulled and its execution enjoined. In remanding the case, the Court said: "But in view of the fact that the contract was partly executed at the time of the trial of the case in the Court below, and the statement of counsel that it would probably be fully executed and completed before the case was decided by this Court, the extent to which relief by injunction may be granted, and the terms of the injunction, if any, that should be issued by the Court below, must depend upon the status of the parties to the contract with reference to the performance thereof when the cause reaches that Court." The reasons for the conclusion reached are set out in the opinion reported in 126 Md. 606.

After the case reached the lower Court further evidence was taken on the 13th of July, 1915, from which it appears that on the 29th of June, 1915, the contract had not been fully executed; that the work and materials necessary to complete the contract amounted to about thirty thousand dollars, and that there was due the contractor for work already done and materials furnished about thirty thousand dollars. Upon this evidence, and evidence tending to show that the construction of the filtration plant under the contract would be completed about the first of August, and that if the further execution of the contract was enjoined it would result in a delay of about three months in the completion of the work, thereby depriving the City of the benefit of the plant during a period of the year when there is great danger of typhoid fever, the Court below passed a decree denying the injunction, without prejudice to the plaintiff to take such further action in the cause, or adopt such other remedy as he was entitled to. The decree recited as the reasons for the Court's action that there was every reasonable assurance that the plant would be completed and that the City would be

furnishing its inhabitants with pure water by the first of August, the beginning of the season when typhoid fever usually prevails and is most dreaded; that this Court had imposed upon the lower Court the responsibility of determining the extent to which relief by injunction should be granted, and the terms of the injunction, if any, that should be issued, and that the advantage to the plaintiff and other taxpayers would be inconsiderable in comparison with the loss and damage that an injunction would occasion "to the parties to the contract." From this decree the plaintiff has again appealed, and contends that he was not only entitled to an injunction restraining the further execution of the contract, but also to a decree requiring the American Water Softener Company to pay into Court, for the use of the City, the amount already paid to it for work, etc., done under said contract. On the other hand, the appellees contend that, notwithstanding the contract is void, as the filtration plant has now been completed by the American Water Softener Company, and the City is enjoying the benefit of it, the Company is entitled to be paid for the work done, etc., and that the equitable doctrine that he who seeks equity must do equity denies the plaintiff the right to an injunction enjoining the City from paying the contractor the balance of the contract price.

The rule relieving municipal corporations from liability for the unauthorized acts of their officers and agents, and recognizing the right of a taxpayer to sue for a writ of injunction restraining the execution of a contract made in violation of the positive provisions of the charter or ordinances of such a corporation, has been rigidly enforced in this State. In the case of *Baltimore* v. *Eschbach,* 18 Md. 276, an action was brought to recover damages for default of the defendants in imposing a valid tax for work done under a contract made by the plaintiff with the City Commissioner for grading and paving one of the City streets. The Court held that the contract was invalid because the Commissioner had no

authority to make it, and said: "Although a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule, as to the effect of the like act of a public agent, is otherwise. The City Commissioner, upon whose determination to grade and pave the contract was made, was the public agent of a municipal corporation, clothed with duties and power, specially defined and limited, by ordinances bearing the character and force of public laws, ignorance of which can be presumed in favor of no one dealing with him on matters thus conditionally within his official discretion. For this reason the law makes a distinction between the effect of the acts of an officer of a corporation, and those of an agent for a principal in common cases; in the latter the extent of authority is necessarily known only to the principal and the agent, while, in the former, it is a matter of record in the books of the corporation, or of public law. A municipal corporation can not be held liable for the unauthorized acts of its agents, although done *officii colore,* without some corporate act of ratification or adoption; and, from considerations of public policy, it seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officers, than to adopt a rule, which, through improper combinations and collusion, might be turned to the detriment and injury of the public.   * * *   As the contract of the appellee was entered into by the Commissioner on behalf of the appellants, under circumstances which gave him no power or authority to bind them, we think they can not be held liable on any action on the contract, nor for any claim sounding in damages for violating or disregarding its provisions. Holding the opinion, that the contract imposed no liability or obligation upon which an action in any form can be maintained, we must reverse the judgment without a *procedendo.*"

In the case of *Baltimore* v. *Reynolds,* 20 Md. 1, where the contract sued on was made by an agent of the City without authority, the Court, after repeating the statement I have

quoted from *Baltimore* v. *Eschbach, supra,* said further: "It is better that an individual should now and then suffer by such mistakes than to introduce a rule against an abuse of which, by improper collusions, it would be very difficult for the public to protect itself." The case of *State* v. *Kirkley,* 29 Md. 85, was an application for a writ of mandamus to compel the building committee of the new City Hall of Baltimore to surrender the plans and specifications for the building and to enjoin them from acting as a building committee. The Court held that the members of the committee had no authority to act in the capacity they had assumed, and, referring to the suggestion that the writ was only granted in the discretion of the Court and to subserve some just and useful purpose, JUDGE MILLER said: "And in this connection it has been argued, with much force, that the City is here impeaching its own acts, asserting the nullity of its own appointments made under its own actual direction, for its service and benefit, and confessedly within the scope of its delegated power; that the appellees accepted the office *bona fide,* and in the full belief that the original ordinance was valid and operative; that there is no charge that the contracts were made improvidently, uneconomically, or in bad faith, or that they are otherwise than beneficial to the City and the people, and in the proper furtherance of the erection of the City Hall which is admitted and known to be a pressing public necessity; that the annulling of these contracts, and destroying all equities founded on them, would be the practical result of granting the writ, and must be substantially the thing aimed at in this proceeding, because the corporation may, at its pleasure, repeal both ordinances and thereby stop the erection of the building, or may change the mode of its superintendence by abolishing the building committee, or appointing other parties in place of the respondents. These considerations, it is contended, divest the application of all merit, and are, of themselves, sufficient to bar the relief prayed, and justify the refusal of the writ. But we have

shown that these parties, without lawful authority, are assuming to act as officers of a municipal corporation * * * assuming to discharge the duties of an office which has no existence. Upon grounds of public policy, for the purpose of prescribing and enforcing the proper exercise of their delegated powers by these corporations and their agents and officers, such illegal assumptions of power ought not to be permitted; nor ought the courts to withhold the exercise of their restraining powers, in such cases, by any consideration of the consequences which may result to those who have inadvertently dealt with parties who thus assume to act without legal authority. No principle of law relating to municipal corporations is more firmly established than that those who deal with their agents or officers must, *at their peril,* take notice of the limits of the powers both of the municipality and of those who assume to act as its agents and officers; and in no State has this principle been more frequently applied or more rigidly enforced than in Maryland." After quoting from *Baltimore* v. *Eschbach, supra,* JUDGE MILLER said further: "The reasonableness and necessity of the rule rests upon the ground that these bodies corporate are composed of all the inhabitants within the corporate limits; that the inhabitants are the corporators; that the officers of the corporation, including the legislative or governing body, are merely the public agents of the corporators; that their duties and powers are prescribed by statutes and ordinances, and everyone, therefore, may know the nature of these duties and the extent of these powers. Hence it is, that the plea of *ultra vires* is used by those who are sued by such corporations, and the corporation itself may use it as a defense, or, in a proceeding like the present, may assert, as plaintiff, the invalidity of such acts, either of itself or its agents and officers, as are the subject of complaint in this case. If this were not so, it would become impossible, in practice, to restrain the acts of such corporations and their officers within the limits of their powers."

The same principle was announced and applied in *Horn* v. *Baltimore,* 30 Md. 218, and in *Baltimore* v. *Gill,* 31 Md. 375, where the bill was filed by a taxpayer of the City to enjoin the Mayor and City Council of Baltimore from carrying out the provisions of an invalid ordinance, CHIEF JUDGE BARTOL said: "In this State the courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations; and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of their lawful authority, and of protecting the citizen from the consequences of their unauthorized or illegal acts. If the right to maintain such a bill as this be denied, citizens and property holders residing or holding property within the limits of a municipal corporation, would be without adequate remedy to prevent the injury and damage which might result to them from the unauthorized or illegal acts of the municipal government, and its officers and agents." In the case of *Baltimore* v. *Keyser,* 72 Md. 106, the Court held that the contract had not been awarded in compliance with an ordinance requiring it to be awarded to the lowest responsible bidder after advertising for proposals, and affirmed the decree of the lower Court restraining the Mayor, etc., from entering into the contract and enjoining the payment by the City of any money for lighting the streets, etc., under the contract. In disposing of the case, JUDGE ROBINSON, after referring to the right of a taxpayer to apply for an injunction to restrain city authorities from making a contract which they had no lawful power to make, said: "Now, it can hardly be necessary to say that, where a special power is thus conferred upon officers of a municipal corporation to make a contract, and the terms and conditions upon which the authority to be exercised are prescribed, there must be at least a substantial compliance with such terms and conditions, or the contract will be invalid. * * * The object, the plain object, of these provisions was to pre-

vent favoritism in awarding the contract, and to secure to
the people of Baltimore City the advantages and benefits to
be derived from competitive bidding. The terms and condi-
tions thus prescribed by the ordinance are conditions prece-
dent, the compliance with which by the defendants was obvi-
ously essential to the exercise of the power conferred." In
the case of *Packard* v. *Hayes,* 94 Md. 233, the bill was filed
by a taxpayer to enjoin the execution of a contract made on
behalf of the City on the ground that it was in violation of
the provisions of the City Charter requiring contracts for
public work to be awarded by the Board of Awards to the
lowest responsible bidder after proposals for the same had
been advertised for. The Court held that in letting a mu-
nicipal contract by competitive bidding, the provisions of the
statute relating thereto must be strictly observed; that a
contract made in violation of the statute is *ultra vires* and
void, and can not be ratified by the municipal government;
that the object of the provisions of the Charter is to prevent
favoritism and extravagance in letting municipal contracts,
and that the execution of a contract made in violation of the
statute should be enjoined.

It seems equally well settled in this State that ordinarily
a corporation is not estopped from asserting its want of
power to execute a contract. In *Steam Navigation Co.* v.
*Dandridge,* 8 G. & J. 248, JUDGE DORSEY said: "If the
corporation is estopped from denying its power, the estoppel
operates with like effect upon those who contract with them,
and the result would be that no matter how limited the design
and powers of a corporation may appear in its charter, prac-
tically it is a corporation without limitation as to its powers.
Such a doctrine as this at this day is dangerous to the inter-
ests of the community, and it is at war with the modern
decisions upon the subject." And in the recent case of
*Western Md. R. R. Co.* v. *Blue Ridge Co.,* 102 Md. 307, in
answer to the contention that as the contract had been partly
executed by both parties the Railroad Company was estopped

to set up the defense of *ultra vires,* JUDGE PEARCE quotes the statement of the Supreme Court in *Thomas* v. *West Jersey R. R.,* 101 U. S. 71: "It was the duty of the Company to rescind or abandon the contract. Though they delayed this for several years, it was nevertheless a rightful act when done. Can this performance of a legal duty, a duty both to the stockholders and the public, give the plaintiff a right of action? To hold that this can be done is, in our opinion, to hold that an act done under a void contract makes all of its parts valid, and that the more you do under a contract forbidden by law, the stronger the claim to its enforcement in the courts." In the case of *Baltimore* v. *Musgrave,* 48 Md. 272, JUDGE MILLER said: "It is very clearly settled that one who contracts or deals with the agents or officers of a municipal corporation, must at his peril take notice of the limits of their powers." And in the case of *Mealey* v. *Hagerstown,* 92 Md. 741, where the bill was filed to restrain the Mayor and Council of Hagerstown and the Street Commissioners from constructing an electric light plant, and one of the grounds upon which relief was sought was that the Board of Street Commissioners had made a contract for lighting the streets for the period of five years, with a provision for a renewal for another period of five years, and the Railway Company, as assignee of the contract, had upon the faith of said agreement expended large sums of money in performance of the stipulation for a renewal, the Court held that the Board of Street Commissioners had no power to make the agreement, and the present CHIEF JUDGE of this Court said: "Nor can the fact, if that be conceded, that Evans or his assigns has on the faith of the agreement expended money to perform his part of the new contract, estop the municipality or in any way prevent it from setting up this defense. Every one dealing with the officers and agents of a municipal corporation is charged with knowledge of the nature of their duties and extent of their powers; and hence a municipal corporation may set up a plea of *ultra vires* or its own want

of power under its charter or constitutent statute, to enter into a given contract or to do a given act in excess of its corporate powers and authority. 15 *Am. & Eng. Ency. of Law,* 1100 and 1101, where many authorities are cited, including *Baltimore* v. *Eschbach,* 18 Md. 276; *Horn* v. *Baltimore,* 30 Md. 218, and *Baltimore* v. *Musgrave,* 48 Md. 272."

The great weight of authority is even more pronounced in support of the rule that where a contract is made in violation of the mandatory provisions of a statute or city charter there can be no recovery against a municipality, upon an express or implied promise, for work and materials furnished under it. In addition to the Maryland cases already cited, I may refer to the case of *Md. Trust Co.* v. *Mechanics Bank,* 102 Md. 608, where CHIEF JUDGE McSHERRY points out the difference between contracts that are *ultra vires* only in the sense that they are beyond the powers of the corporation, and contracts that are illegal because in violation of established principles of public policy or by reason of being repugnant to the Code, and where he says: "The fact that the Legislature has prescribed a particular mode to be pursued for the accomplishment of such a result necessarily excludes the right to resort to any other or different mode. * * * as that method of reducing the stock is not the method provided by the Code, it must of necessity be an unlawful method, and a contract entered into with a view of carrying out an unlawful method is a contract to do an unlawful thing, and consequently is an unlawful contract. Under such circumstances, a plaintiff must look elsewhere than a court of justice for such assistance as he may require." It is said in 15 *Am. & Eng. Ency. of Law,* 1086: "The law is well settled that when the mode of proceeding in respect to municipal contracts is prescribed by law, or in the charter of the corporation, such mode must be strictly pursued by the corporation in their relation to the awarding and making of contracts or in their subsequent ratification. If this is not

492      KONIG vs. M. & C. C. OF BALT.

Dissenting Opinion.                    [128

done, no liability is incurred. The party dealing with a municipal body is bound to see to it that all of the mandatory provisions of the law are complied with, and if he neglects such precaution he becomes a mere volunteer and must suffer the consequences"; and in the second edition of the same work, Vol. 20, p. 1165, it is stated: "The general rule is that a provision with reference to letting contracts on bids is mandatory and essential to the validity of contracts entered into, in the absence of which no liability is imposed even though fully performed by one of the parties thereto, and substantial benefits are conferred on the city." The same view is stated in 3 *McQuillin on Municipal Corp.,* sec. 1181, as follows: "The general rule is that if a contract is within the corporate power of a municipality but the contract is entered into without observing certain mandatory legal requirements specifically regulating the mode in which it is to be exercised, there can be no recovery thereunder. If a statute or charter says that certain contracts must be let to the lowest bidder, or that they must be made by ordinance, or that they must be in writing, or the like, there is a reason therefor based on the idea of protecting the taxpayers and inhabitants, and these provisions are mandatory, and while it is undoubtedly true that mere irregularities in making the contract are not fatal to a recovery, yet if the contract is entered into or executed in a different manner, the mere fact that the municipality has received the benefits of the contract which has been performed by the other party, does not make the municipality liable, either on the theory of ratification, estoppel, or implied contract, in order to do justice and pay the reasonable value of the property or services.

"The prevailing rule undoubtedly is that if the powers of a municipality or its agents are subjected by statute or charter 'to restrictions as to the form and method of contracting that are limitations upon the power itself, the corporation can not be held liable by either an express or an implied contract in defiance of such restriction.'

"The theory on which such cases are decided is that if any substantial or practical results are to be achieved by the restrictions upon the powers of municipal officers or boards to incur liabilities, as contained in the statutes or charter, no recovery on an implied contract can be allowed, notwithstanding that there is apparent injustice in some cases in adhering strictly to statutes or charter provisions. 'It is better that an individual should occasionally suffer from the mistakes of public officers or agents, than to adopt a rule which, through improper combination or collusion, might be turned to the detriment and injury of the public."

In the case of *Jersey City Supply Co.* v. *Mayor, etc., of Jersey City,* 71 N. J. L. 631, 60 Atl. 381, the Court said: "It is well settled, however, that a municipal corporation can act only through its authorized agents, and that when the powers of the corporation or its agents are subjected by law to restrictions with respect to the subject-matters of contract or to restrictions as to form and method of contracting that are limitations upon the power itself, the corporation can not be held bound by either an express or implied contract in defiance of such restrictions." In that case the goods were used by the members of the fire department.

In the case of *Peck-Williamson Co.* v. *Steen School Township,* 30 Ind. App. 637, 66 N. E. 909, the Court said: "The act was designed to remedy an existing evil. Its provisions are not formal, but material and substantial. The trustee who does not observe them can not bind his township, either directly or indirectly. The contract made by him otherwise is void * * * the delivery and acceptance of goods under it does not create an obligation to pay therefor. To so hold would be to nullify the act, and to declare that a void contract could be made valid by being persisted in." '

In *Buchanan Bridge Co.* v. *Campbell et al., Commissioners,* 60 Ohio St. 406, 54 N. E. 372, the Supreme Court of Ohio said, quoting from the syllabus: "A contract made by County Commissioners for the purchase and erection of a

bridge, in violation and disregard of the statute on that subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to such unlawful transactions where they had placed themselves, and will refuse to grant relief to either party." In the course of its opinion the Court said further: "It is necessary to so construe the statutes in order to prevent the evils which induce the enactment of them. If such statutes could be evaded there would always be found some public servants who would be ready and willing to join in transactions detrimental to the public, but favorable to themselves or some favored friend; and, if public officers should be ever so honest, some persistent agent or salesman would impose upon them and obtain more out of the public treasury than is justly due."

In the case of *People* v. *Gleason, Mayor,* 121 N. Y. 631, 25 N. E. 4, the charter of the city required the contract to be let to the lowest bidder, etc., and that not having been done, the Court of Appeals held that the contract was illegal and void, and said: "This provision was inserted in the charter undoubtedly to prevent favoritism, corruption, extravagance and improvidence in the procurement of work and supplies for the city, and it should be so administered and construed as fairly and reasonably to accomplish this purpose. If contracts for work and supplies can be arbitrarily let subject to no inquiry or impeachment, to the highest instead of the lowest bidder, under such a provision as is found in this charter and substantially in the charters of all the other cities in the State, then the provision can always be nullified, and will serve no useful purpose."

In *Donovan* v. *The City of New York,* 33 N. Y. 291, where the contract was not made as the law required, the Court held that it was "a simple and absolute nullity," and that the parties aggrieved had no remedy against the corporation, because they were employed "in contravention of the policy and terms of the statute."

In *McDonald* v. *Mayor,* 68 N. Y. 23, the Court held that
if the charter imposes restrictions upon the manner of con-
tracting it must be observed, and that where a person makes
a contract with the City of New York for supplies to it,
without the requirements of the charter being observed, he
can not recover the value thereof upon an implied liability.
In the opinion, JUDGE FOLGER said: "How can it be said
that a municipality is liable upon an implied promise, when
the very statute which continues its corporate life, and gives
it its powers, and prescribes the mode of the exercise of them,
says that it should not, and hence can not, become liable save
by express promise. * * * It is plain, that if the restrictions
put upon municipalities by the Legislature for the purpose
of reducing and limiting the incurring of debt and the ex-
penditure of public money, may be removed, upon the doc-
trine now contended for, there is no legislative remedy for
the evils of municipal government, which of late have excited
so much attention and painful foreboding."

In the case of *Dickinson* v. *The City of Poughkeepsie,*
75 N. Y. 65, the Court said: "The statute absolutely re-
quired all contracts for the whole or any part of this reser-
voir to be made with the lowest bidder, after public notice
and receiving proposals, and the Commissioners have no
power to contract otherwise. It follows from what has been
said that this contract is in excess of their power, illegal and
void. Being void when executory, its execution does not
confer upon the plaintiffs any right of action thereunder.
There is no ratification of a void contract, for the Commis-
sioners had no power to contract, either by ratification or
otherwise, except with the lowest bidder, upon advertisement.
A promise can not be implied where there is no power to
contract. * * * There can be no implied promise to pay
upon a *quantum meruit,* where there is no power to contract,
either expressly or impliedly, except upon a written contract
with the lowest bidder after advertisement. * * * It is
difficult to see what use or force there could be in such pro-

hibitions, so general as to municipalities and so much a part of our policy in this State; if the consummation of their violation brings with it the protection of the law or any right of action for payment."

In the case of *Roehmheld* v. *City of Chicago,* 231 Ill. 467, 83 N. E. 291, the Court held that where there is a statute or ordinance prescribing the method by which an officer or agent of a municipal corporation may bind the municipality by contract, the method must be followed, and there can be no implied contract or implied liability of such municipality, and it is there said: "When the agent of the city is restricted by law as to the method of contracting, the city can not be bound otherwise than by a compliance with the conditions prescribed for the exercise of the power. * * * The performance of work or furnishing materials for the city and the acceptance of resulting benefits will not render it liable to pay for the work which was not authorized."

The case of *Cawker* v. *Central Paving Co.,* 140 Wis. 25, where the bill was filed by a taxpayer to enjoin the City of Milwaukee from paying for work done under a void contract, is to the same effect, and there the Court said: "The contract between the appellant and the city was expressly adjudged to be invalid, in *Cawker* v. *Milwaukee,* 133 Wis. 35, for failure to comply with the charter provisions relating to contracts for the use of patented articles. These provisions were intended to secure and make effective competition between bidders. To hold that the city might, without compliance with said provisions, ratify the contract and so validate it, or that the appellant might, notwithstanding the invalidity of the contract on this ground, go on and complete it and recover upon *quantum meruit,* would be to make these charter provisions practically ineffective. Former decisions of this court forbid such recovery by the appellant."

In the case of *Richardson* v. *Grant County,* 27 Fed. 495, where an Indiana statute required the county contracts to be awarded pursuant to competitive bidding, Grant County awarded a contract for the construction of a court house in

violation of the statute. The court house was constructed
and was accepted and used by the county. The contractor
sued the county and sought to recover on a *quantum meruit.*
The Court said: "It is conceded, as I understand, that under
these statutory provisions no special contract for the work
done by the plaintiff, not made in substantial conformity
with the statute, could be enforced; but the plaintiff insists
that, upon the averment that the board of commissioners,
acting for the county, had received and was in the enjoyment
of the work done and materials furnished by him, he is enti-
tled, upon the common count, to recover the *quantum mer-
uit.* Neither upon authority, nor in reason, as it seems to
me, can this be so. In the common count it is necessary to
aver, and the plaintiff has averred, that the work was done
at the special request of the defendant—that is to say, of its
board of commissioners. This statute, however, expressly
forbids such request or assent on the part of the board. Of
this the plaintiff was bound to take knowledge, and conse-
quently is placed in the attitude of one who has done a vol-
untary service, for which he can legally claim no recom-
pense. The common count or claim to recover a *quantum
meruit* must rest upon an implied promise or liability; but
where a municipal body is required to make certain contracts
in a prescribed way, and forbidden to make them in any other
way, there is left no room for an implied obligation."

In the case of *Edison Electric Co. v. City of Pasadena,*
178 Fed. 425, the Court said: "The positive prohibition of
a statute can no more be avoided by evasion than it can be
violated directly. A citation of authorities upon so plain a
proposition is unnecessary. So, too, is the law well settled
that where, as in the cases between these parties here under
consideration, the contract upon which suit is brought is for-
bidden by statute, the acceptance of benefits raises no impli-
cation of an obligation. The law is not properly chargeable
with the absurdity of implying an obligation to do that which
it forbids."

In *Thomas* v. *City of Richmond*, 12 Wall. 349, Mr. Jus-
tice Bradley, after stating, "where the parties are not *in
pari delicto,* actions are sustained to recover back the money
or other consideration received for such obligations, though
the obligations themselves, being against law, can not be
sued on," said further: "But, in the case of municipal and
other public corporations, another consideration intervenes.
They represent the public, and are themselves to be protected
against the unauthorized acts of their officers and agents,
when it can be done without injury to third parties.   This
is necessary to guard against fraud and peculation.   Persons
dealing with such officers and agents are chargeable with
notice of the powers which the corporation possesses, and
are to be held responsible accordingly.   The issuing of bills
as a currency by such a corporation without authority is not
only contrary to positive law, but, being *ultra vires,* is an
abuse of the public franchises which have been conferred
upon it; and the receiver of the bills, being chargeable with
notice of the wrong, is *in pari delicto* with the officers, and
should have no remedy, even for money had and received,
against the corporation upon which he has aided in inflicting
the wrong.   The protection of public corporations from such
unauthorized acts of their officers and agents is a matter of
public policy in which the whole community is concerned,
and those who aid in such transactions must do so at their
peril."

In *Buchanan* v. *Litchfield,* 102 U. S. 278, the plaintiff
brought suit against the City of Litchfield, Illinois, to recover
the amount of certain coupons of which he was the owner,
and the declaration, in addition to special counts, contained
the usual counts for money lent, etc., and money had and
received.   The Court held that the bonds were issued in vio-
lation of the State Constitution, and void, and that there
could be no recovery.   In the course of the opinion, Mr. Jus-
tice Harlan said: "Our attention is called by counsel to
the exceeding hardship of this case upon those whose money,

it is alleged, has supplied the City of Litchfield with a system of water works, the benefits of which are daily enjoyed by its inhabitants. The defense is characterized as fraudulent and dishonest. Waiving all considerations of the case, in its moral aspects, it is only necessary to say that the settled principles of law can not, with safety to the public, be disregarded in order to remedy the hardships of special cases." The Court refused to express an opinion upon the question whether the city could be required to refund to the proper party money actually received by it or its authorized agent. After that case was decided, an owner of some of the bonds brought suit in equity against the City of Litchfield, setting out the result in the above case and alleging that the city was liable to him for the money it received from him and which was used in the construction of the water works. He contended that, notwithstanding the bonds were void, the city was bound to return the money it received for them. MR. JUSTICE MILLER, in disposing of the case, said: "There is no more reason for recovery on the *implied* contract to repay the money than on the express contract found in the bonds. * * * The holders of the bonds and agents of the city are *particeps criminis* in the act of violating that prohibition, and equity will no more raise a resulting trust in favor of the bondholders than the law will raise an implied assumpsit against the policy so strongly declared." *Litchfield* v. *Ballou,* 114 U. S. 190.

It is said in *McQuillin on Municipal Corporations,* Vol. 3, p. 2624: "There is considerable authority, however, to support the rule that a recovery may be had on a *quantum meruit* in such cases, upon the theory that it is not justice, where a contract is entered into between a municipality and others in good faith, and the corporation has received benefits thereunder, to permit the municipality to retain the benefits without paying the reasonable value therefor, the same as a private corporation or individual would have to do." But the doctrine of the cases cited in support of the text, if

applied to the facts of this case, would effectually annul the provisions of the City Charter, and place the matter of the expenditure of municipal funds entirely beyond the control of the Legislature. The City authorities and a contractor could at will ignore the safeguards the Charter provides and rely upon implied assumpsit to recover compensation for work and materials unlawfully furnished. I am unable to give my assent to a rule that would logically and inevitably lead to such a result.

In 126 Md. 606, the Court hed that the contract here in question was illegal and void because not made in compliance with the provisions of the City Charter, and where that is the case it would seem clear upon the authorities cited, that the municipality can not be held liable either upon the express contract, implied assumpsit or the doctrine of estoppel. The Court also held on the former appeal that the plaintiff was entitled to an injunction restraining the further execution of the contract. Nothing has occurred since effecting or altering the relations of the parties to suggest the application of a different principle or warranting a different conclusion so far as the contract remains *unexecuted.*

The language of this Court in remanding the case had reference to the fact that the contract had been partly executed at the time of the first trial of the case in the Court below, and the statement of counsel for the defendants that it would probably be completed before the decision of this Court on the former appeal. The extent to which the lower Court could grant relief by injunction would necessarily depend upon the status of the parties with reference to the performance of the contract when the case reached that Court.

The contract was made in violation of the positive and mandatory provisions of the City Charter, and the considerations which induced the learned Court below to withhold the writ, while calculated to appeal to the discretion of the Chancellor, were not, in my judgment, sufficient to justify the continued execution of a void agreement. The right of a

taxpayer to have enjoined the execution of an illegal contract made on behalf of the City ought not to depend upon the question of the advantage to the City to perform it, or the injury it would inflict upon the parties to the unlawful agreement. To so hold would in effect repeal the provisions of the Charter as to all contracts deemed by the Court advantageous to the City. Nor does the plaintiff's interest in the suit, other than as a taxpayer, affect his right to the relief. In the case of *Packard* v. *Hayes, supra,* JUDGE JONES, speaking for the Court said: "In the same case (*Mazet* v. *City of Pittsburgh,* 137 Pa. 548), it was also held that the allegation of the want of good faith in the plaintiff in bringing the suit, the same as is made here, was immaterial in such case; that the plaintiff as taxpayer had a clear legal right to enforce; and the motives that actuated the bringing of the suit were immaterial. In the case of *Mayor etc.,* v. *Keyser et al.,* 72 Md. *supra,* this Court adopted the following language of the Judge (DENNIS, J.), who decided the case below, where it was said the complainants (taxpayers) 'have a right to require that the money they have contributed for the public benefit shall be spent only for the purposes, and in the manner authorized by law, and that every security designed to protect its proper expenditure shall be faithfully observed. This right is a vital one to them and they are required to allege no other injury than that it is about to be violated. They will be injured, if the violation is permitted, by the act of violation alone.' If, then, where a municipal corporation is proceeding to make a contract which it has no power to make, as was being done in the case just referred to, and as we find has been done in this case, which contract will involve the expenditure of money of the taxpayer, such taxpayer sustains, by that act, an injury which gives him a clear legal right to redress, it is not perceived how, when he seeks that redress, his motive can take away his right. As we have seen, it was held in the case of *Mazet* v. *Pittsburgh,*

502    KONIG vs. M. & C. C. OF BALT.

Dissenting Opinion.          [128

*supra,* that the motive alleged could not be allowed that effect."

For the reasons stated I think the plaintiff is entitled to the writ of injunction restraining a further execution of the contract by either the City or the American Water Softener Company, but he is not, in my judgment, entitled to a decree requiring the American Water Softener Company to bring into Court for the use of the City the amount already paid the Company for work and materials furnished under the contract in question. In the case of *Thomas* v. *R. R. Co.,* 101 U. S. on page 85, the Court said: "There can be no question that, in many instances where an invalid contract, which a party to it might have avoided or refused to perform, has been fully performed on both sides, whereby money has been paid or property changed hands, the courts have refused to sustain an action for the recovery of the property or money so transferred. In regard to corporations, the rule has been laid down by COMSTOCK, CHIEF JUDGE, in *Parish* v. *Wheeler,* 22 N. Y. 494, that the executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it." It is said in *Bispham's Principles of Equity,* p. 238: "It is well settled that a court of equity will not lend its aid actively to enforce a forfeiture." See also 1 *Pomeroy's Eq. Jurisprudence,* secs. 459, 1460, and 2 *High on Injunctions* (4th ed.), sec. 1110. While this may be too broad a statement of the rule, it serves to express the view that forfeitures are not favored in equity. Neither the plaintiff nor the City can return the consideration for which money was paid to the Company, and to compel the Company to repay it would work great injustice to one who, in good faith, rendered the services and furnished the materials. It is true the principal part of the work was done after the bill in this case was filed, and a part of it after the contract was declared void by this Court, but the lower Court in the first instance held otherwise, and after the case was remanded, the Court below,

in the exercise of the discretion supposed to have been committed to it, refused to stay the execution of the work. There is no suggestion in the case of any fraud or collusion in the awarding of the contract, or that the price the City agreed to pay was in excess of what the work and materials contracted for were fairly worth. Under such circumstances a court of equity will not require the Company to forfeit the sum paid to it while the City retains the benefits of the work and materials.

In the Court below the defendants offered evidence for the purpose of showing that the Board of Awards did award the contract for the filter equipment according to the specifications for Item 1-B to the American Water Softener Company, but the contract itself as well as the other evidence in the case is a complete answer to that suggestion.

In accordance with the views I have expressed, I think the decree of the Court below should be reversed, and the case remanded in order that an injunction may be granted restraining the City from making any further payments to the American Water Softener Company on account of said contract, and, in the event that the work has not been completed by the American Water Softener Company, restraining the further execution of the contract by the Company, ᵗ the cost of the City.

I am authorized by JUDGE STOCKBRIDGE and JUDGE CONSTABLE to say that they concur in this opinion.