# CIRCUIT COURT OF BALTIMORE CITY.

Filed December 30, 1924.

WILLIAM H. CRANE, ET AL.
VS.
J. COOKMAN BOYD, ET AL.

*Chester F. Morrow, Emory H. Niles* and *Allan W. Rhynhart* for complainants.

*Philip B. Perlman,* City Solicitor, and *Wirt A. Duvall, Jr.,* Deputy City Solicitor, for respondents.

STEIN, J.—

The plaintiffs who are members of the Board of Directors of the Voters' League, an unincorporated association, bring this action as residents, citizens and taxpayers of this City.

The defendants are the City of Baltimore, its Comptroller, its Park Commissioners and the Heise and Bruns Mill & Lumber Company, a corporation, and D. Henry Buhman.

The bill filed May 7th, 1924, seeks to restrain the City's carrying out and paying for the material named in contract whereby the Heise and Bruns Mill & Lumber Company were to furnish certain millwork, and the Defendant Buhman certain roofing, all needed in the repair of one building, and in the erection of another for use in connection with the swimming pool at Druid Hill Park. The contract price for the mill work was $20,980; that for the roofing was $3,600. The right to the relief asked is the alleged want of power in the City to make these contracts, because of the want of compliance with Sections 14 and 15 of the City Charter, which require in cases of expenditures of more than $500.00 for the purchase of supplies or materials, newspaper advertisements for bids of not less than ten or more than twenty days, and require the bid with a certified check for $500.00 to be submitted to the Board of Awards, and that the successful bidder shall execute a contract and give bond for its faithful performance.

The answers deny that the above sections of the charter control; and ground the City's right to make the contract upon Section 36B of the Charter. The testimony shows that the work and materials in each contract has been furnished and payment made in full therefor; and that in the awarding of the contracts, the Board of Estimates acted under the advice of the City Solicitor and over the objections of two of its members. The testimony further shows that each contract was awarded to the lowest of a number of bidders, and at a substantial saving in each case, which saving amounted to about $78,000 on the entire work done, of which the work and materials in the contracts attacked were part. It appears that bids for this entire work were submitted under Sections 14 and 15 of the Charter, the lowest of which was $228,000, all of which were re-

jected by the Park Board as much too high, and the work done by the Park Board under the authority of Section 36-B, at a cost of something less than $151,000.

As the work and materials to be done and furnished under the contract named in the bill, have been done and furnished at a substantial saving to the City, and payment in full made therefor, and as plaintiffs' counsel concede that there was not any fraud or bad faith in awarding the contract, it is not necessary to determine whether or not Section 36-B of the City Charter authorized the giving out of the contract by the Board of Estimates.

In the second Konig case, 128 Md. 465, at 473, the Court of Appeals, through Boyd, C. J., in discussing this question held that—

"While the mere fact that a municipality can make a good bargain does not authorize it to violate its charter, yet when it so clearly appears as it does in this case, that it was not only no loss, but a very decided benefit to the City to make the contract * * * and that the violation of the Charter was of a character which indicates an honest mistake and that it was not intentional, a Court of Equity ought not to be required to deal with such a case precisely as it would with one where there was a deliberate and wholly inexcusable violation of law, especially if the latter showed fraud, collusion or unjust treatment of others.

"As the contract is now completed on the part of the contractor, it would be useless to issue an injunction to restrain its execution, and certainly no good can be accomplished for the plaintiffs * * * by a mandatory injunction requiring the removal of the plant installed."

The interests of the plaintiffs are those of citizens and taxpayers. The funds used to pay for the work and materials furnished are Park Board funds, realized from the Park Tax; so that such interests are not financial but those of citizens wishing to see that the City Government is administered according to law. The record shows that they come within the doctrine laid down in the Konig case, supra, 128 Md. 477.

"477. The motive of taxpayers in bringing such suits as these are immaterial, but we do not understand that to mean, so far as this Court is

concerned, that in determining the relief to be given to a taxpayer, we can not consider all the circumstances surrounding the contract. It certainly does not mean, when the question is as to what relief shall be granted, that he is entitled to the same redress that he would be if he was really a sufferer when he is not shown to have lost anything.

"478. A taxpayer cannot sue to enjoin an illegal or unauthorized act on the part of a municipality, unless such act will result in an increase of his taxes or will otherwise result in direct or indirect pecuniary injury. * * *

"479. And when a case has proceeded so far that the only live question is compensation vel non., it would be utterly illegal to grant relief beyond actual or possible loss to the taxpayer or municipality or both.

"480. The question here is whether a Court of Equity shall exercise its power at the instance of one who has not shown that he or the City has lost anything."

In this case the taxpayers have not lost anything.

The City has made a substantial saving, its citizens are enjoying the work done, and the authorities agree (including the judges who dissented in the Konig case, supra, 128 Md. at 503), that in such cases the money paid cannot be recovered back.

"Under such circumstances a Court of Equity will not require the company to forfeit the sum paid while the City retains the benefits of the work and materials."

I will sign a decree dismissing the bill; the City to pay costs.